IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHN SANTOS, JR.,

        Petitioner,               No. CIV S-02-1571 FCD JFM P

    vs.

TOM MADDOCK, et al.,

        Respondents.         <u>FINDINGS & RECOMMENDATIONS</u>

_____/

        Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 1999 conviction on charges of aggravated assault and possession of a prohibited weapon (a billy club).  He seeks relief on the grounds that: (1) he received ineffective assistance of appellate counsel in a prior criminal case; (2) a 1986 prior conviction used to enhance his sentence was constitutionally invalid and was therefore ineligible to be used as an enhancement; (3) the state court erred in imposing a five-year sentence enhancement based on the prior invalid 1986 conviction; (4) he received ineffective assistance of trial counsel in the instant case; and (5) the prosecutor committed misconduct.  Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

/////

FACTUAL BACKGROUND[1]

A jury found [petitioner] Raymond John Santos, Jr., guilty of assault with a deadly weapon (Pen. Code § 245, subd. (a) (1) and possession of a "billy" (Pen. Code, § 12020, subd. (a) (1)).[2]

* * *

When police officers arrived to investigate an altercation at a fast food restaurant in West Sacramento, they discovered David Latham bleeding from a blunt force head wound.  At trial, the prosecution and the defense presented different versions of events that resulted in the altercation and Latham's injury.  They jury apparently disbelieved [petitioner's] account.

*The prosecution version*

Some time before the altercation, Latham loaned [petitioner] $60 to buy food for himself and his son.  [Petitioner] did not repay the loan as he promised.  Immediately before the altercation, Latham and some of his friends and relatives drove into the fast food restaurant intending to order food through the drive-in lane.  Latham saw [petitioner] in a car in the drive-in lane, and got out to ask him about the loan.  As Latham approached, [petitioner] saw him, became enraged, and got out of his car with a baseball bat in his hands.  [Petitioner] attacked Latham; during the affray, [petitioner] struck Latham with the bat, causing the injury.  When police sirens could be heard, [petitioner] and his son, Raymond Santos III, fled on foot.

*The defense version*

Some time prior to the altercation, Latham gave [petitioner] $60 to buy marijuana for Latham. [Petitioner] decided to keep the money.  When Latham later demanded repayment, [petitioner] said he would return the money after the first of the month.  While [petitioner] and some of his relatives were in the drive-in lane at the fast food restaurant, Latham and one of this friends, Floyd Niepert, approached [petitioner's] car.  Niepert struck the hood or

---

[1]  This statement of facts is taken from the November 8, 2001, opinion by the California Court of Appeal for the Third Appellate District (hereinafter Opinion), at pgs. 2-3, appended as Exhibit B to Respondent's Answer, filed on March 28, 2003.

[2]  A "billy is a heavy weapon used for delivering blows.  (Webster's 3d New Internat. Dict. (1986) p. 216.)  Included within the definition of a "billy" is an instrument the ordinary use of which is harmless, such as a baseball bat, if evidence establishes that it was intended for use as a dangerous weapon, rather than for a harmless purpose.  (People v. Grubb (1965) 63 Cal.2d 614, 620-621, & fn. 8; People v. Savedra (1993) 15 Cal.App.4th 738, 742-745; People v. Raleigh (1932) 128 Cal.App.105, 108-110.)

windshield of the car.  While [petitioner] was looking at Niepert, Latham struck [petitioner] on the neck with his fist. [Petitioner] got out of the car and a scuffle ensued.  No one had a bat or other weapon.  During the scuffle, [petitioner] and Latham fell to the ground, and Latham struck his head on a raised curb.

## ANALYSIS

### I. <u>Standards for a Writ of Habeas Corpus</u>

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents "if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases', or if it 'confronts a set of facts that are materially indistinguishable from a decision'" of the Supreme Court and nevertheless arrives at different result.  <u>Early v. Packer</u>, 573 U.S. 3, 8 (2002) (quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.  <u>Williams</u>, 529 U.S. at 413.  A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  <u>Id.</u> at 412; <u>see also</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75

/////

3

1  (2003) (it is "not enough that a federal habeas court, in its independent review of the legal

2  question, is left with a 'firm conviction' that the state court was 'erroneous.'")

3         The court looks to the last reasoned state court decision as the basis for the state

4  court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  Where the state court

5  reaches a decision on the merits but provides no reasoning to support its conclusion, a federal

6  habeas court independently reviews the record to determine whether habeas corpus relief is

7  available under section 2254(d).  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

8  II.  Petitioner's Claims

9      A.  Petitioner's 1986 Prior Conviction

10         Petitioner's first three claims involve his 1986 prior conviction for burglary,

11  which was used to impose a five-year enhancement on his sentence in this case.[3]  The California

12  Court of Appeal described the facts of the 1986 conviction and petitioner's claims pertaining

13  thereto as follows:

14          [Petitioner] received a five-year enhancement for each of his two
        prior serious felony convictions.  (Pen. Code, § 667, subd. (a)(1).)

15          But the trial court struck one of those convictions for purposes of
        sentencing under the "three strikes law."  (Pen. Code, §§ 667,

16          subds. (b) - (I); 1170.12.)

17                      * * *

18          At issue is [petitioner's] conviction in 1986 for residential

19          burglary.  From the documents submitted to the trial court, it
        appears [petitioner] entered a plea of guilty to that crime and was

20          sentenced to four years in state prison.  On appeal, this court
        concluded that some of the evidence against [petitioner] should

21          have been suppressed and, thus, he should be given the opportunity
        to reconsider his guilty plea.  Accordingly, the judgment was

22          reversed and the matter was remanded for further proceedings as
        follows: "The [trial] court is directed upon the motion of defendant

23

24      [3]  Petitioner was sentenced to double the four-year upper term on the assault count plus a
five-year enhancement for each of two prior serious felonies, including his 1986 conviction, for a

25  total sentence of eighteen years in prison.  (Clerk's Transcript on Appeal (CT) at 472-74;
Reporter's Transcript on Appeal (RT) at 714-20.)  Petitioner's sentence for possession of a billy

26  club was stayed.  (Id.)  Petitioner was also impeached with his three prior felony convictions.
(RT at 557-58.)

within 30 days of this opinion to vacate the guilty plea and to proceed to trial or other appropriate disposition.  Should defendant not so move, the trial court is directed to reinstate the judgment."

[Petitioner] did not move to withdraw his plea.  It appears that, while the matter was on appeal, he was committed to the California Rehabilitation Center (CRC).  Eventually in 1991, when his presentence custody credits and CRC custody credits were sufficient, [petitioner] successfully asked the trial court to reimpose the prison term and deem it fully served.

[Petitioner] suggests, but did not offer any evidence, that he may not have been informed or otherwise aware of his opportunity to withdraw his plea to the 1986 charge.  He asked the trial court to consider this scenario in support of a motion to strike the 1986 residential burglary conviction in furtherance of justice pursuant to Penal Code section 1385.

In considering whether to strike the prior conviction, the trial court indicated a view that "[t]he conviction was determined to be constitutionally invalid by the Third District Court of Appeal." Although [petitioner] had not moved to withdraw his plea, the court said, "I believe that I can and should weigh the fact that the Third District Court of Appeal overturned that conviction."

[Petitioner] contends the trial court's decision to strike the 1986 conviction for purposes of the three strikes law constituted a finding that it was obtained unconstitutionally and, through collateral estoppel, this finding precluded the use of that prior conviction for any purpose.  We disagree.

First, collateral estoppel is inapplicable here.  "Collateral estoppel precludes a party to an action from relitigating in a second proceeding matters *litigated and determined in a prior proceeding.*"  (People v. Sims (1982) 32 Cal.3d 468, 477, italics added.)  Thus, the doctrine operates to give conclusive effect to a final adjudication in a prior, completed proceeding.  (Ibid.)  It does not apply to non-final rulings or rulings within the same proceeding.  (citations omitted.)

Second, what [petitioner] is attempting to do is extrapolate an implied finding from the trial court's ruling on one motion, and give that finding conclusive and unreviewable effect with respect to the court's decision on another matter in the same litigation. This he may not do.  In appropriate circumstances, a trial court may exercise discretion to strike a prior conviction for purposes of the three strike law.  (People v. Superior Court (Romero) (1996) 13 Cal.4th 497.)  But a trial court does not have discretion to strike a prior serious felony conviction for purposes of Penal Code section 667, subdivision (a).  (Pen. Code § 1385, subd. (b).)

1   Here, the trial court imposed a five-year enhancement pursuant to Penal Code section 667, subdivision (a) for the 1986 burglary conviction. While a prior conviction obtained in violation of a defendant's constitutional rights may not be used to enhance a prison sentence (People v. Sumstine (1984) 36 Cal.3d 909, 919), [petitioner] is entitled to relief only if the record establishes that his 1986 burglary conviction was obtained in violation of his constitutional rights. To the extent [petitioner] contends the trial court made an express or implied finding of unconstitutionality, such a finding is subject to review on this appeal. This is true even though the People did not appeal, since they are entitled to raise questions of error in support of their assertion that the judgment is correct in fact and in law. (Code Civ. Proc., § 906; Mott v. Horstmann (1950) 36 Cal.2d 388, 393; Kasel v. Remington Arms Co. (1972) 24 Cal.App.3d 711, 728.)

Third, there is no evidence in the record to support a finding that the 1986 burglary conviction was obtained unconstitutionally. This court's decision in the 1986 case did not reverse [petitioner's] conviction. Rather, it reversed the judgment and gave [petitioner] the opportunity to move to withdraw his guilty plea that served as the basis for his conviction. [Petitioner] did not so move. Pursuant to our decision, and defendant's later motion for reinstatement of the judgment, the conviction stands. Nothing in that procedure rendered the conviction unconstitutional or determined it to be so.

To the extent [petitioner] suggests that his counsel may not have informed him of the opportunity to withdraw the guilty plea, the claim is one of ineffective assistance of counsel. Such a claim cannot be raised on a motion to strike a prior conviction. (Garcia v. Superior Court (1997) 14 Cal.4th 953, 966.) In any event, an appellant claiming ineffective assistance of counsel bears the burden of proof. (People v. Pope (1979) 23 Cal.3d 412, 425.) [Petitioner] produced no evidence that his counsel in the 1986 burglary proceedings failed in the performance of counsel's professional responsibilities; [petitioner] simply suggested the possibility that counsel might not have performed as required. Lacking any evidentiary support, this assertion is insufficient to support a finding of ineffective representation.

For these reasons, we reject [petitioner's] contention that his prison sentence was improperly enhanced by five years pursuant to Penal Code section 667, subdivision (a), based upon his conviction for burglary in 1986.

(Opinion at 5-9.)

In the instant petition, petitioner argues in claim 1 that his appellate counsel in the

1986 case rendered ineffective assistance because of her failure to pursue the option, suggested in

1   the opinion of the California Court of Appeal, that petitioner withdraw his guilty plea.

2   Specifically, petitioner argues that counsel

3           did not follow-up and I was never given the opportunity to
        withdraw my plea.  I did not receive a copy of the reversal until
4           April 1988 when [his attorney] sent me a copy of her petition for
        review.  I did not receive it until that date because I was not living
5           at the address she sent it to at that time.

6   (Pet., attach 12(a) at 1.)  Petitioner states that because of appellate counsel's errors, he was

7           convicted in 1993 for a felon in possession of a gun.  The only
        basis for finding I was a felon was the 86 conviction.  Both the '86
8           and '93 convictions were used for impeachment purposes at my
        trial in May 1999.  In Yolo County Superior Court case No. 99582.
9           This was err and 1999 conviction case No. 99582 should be
        reversed.

10

11   (Id.)

12          At his 1999 trial which resulted in the conviction challenged here, petitioner was

13   impeached with evidence of three prior convictions: (1) the 1996 burglary; and (2) 1993

14   convictions for discharging a firearm in a grossly negligent manner and being a felon in

15   possession of a firearm, both stemming from the same incident.  (RT at 557-58.)  Petitioner is

16   arguing, in effect, that: (1) he did not receive timely notice of the 1986 Court of Appeal opinion;

17   (2) if he had received such notice, he would have withdrawn his guilty plea; (3) he would have

18   been acquitted on a retrial; and (4) he would not have been charged with being a felon in

19   possession of a handgun 1993 because he would not have received the underlying 1986 felony

20   conviction.

21          In his second claim in the instant petition, petitioner argues that his 1986

22   conviction is "unconstitutional" because the trial court did not reinstate the judgment within

23   thirty days, after petitioner failed to withdraw his guilty plea, as directed by the Court of Appeal

24   in its opinion.  Petitioner concedes that the judgment was finally reinstated in 1991 on his motion

25   to terminate his CRC commitment, but he argues that the judge was without "authority or

26   jurisdiction" to reinstate the judgment "because there was no conviction officially intact at that

1   time to work with because he failed to perform the duty of officially reinstating the conviction in

2   1987." (Pet., attach 12(b) at 1; Traverse at 8.)  Petitioner argues,

> since the reinstatement was ignored, Judge Roach was allowed to
> rule on my 1991 motion to reinstate therefore allowing the
> procedure to appear proper, when in fact it wasn't, making the
> 1991 conviction of reinstatement unconstitutional.

6   (Pet., Attach 12(b) at 2.)  Petitioner is arguing, in other words, that the state court's failure to

7   follow the procedure for reinstating the 1986 judgment, as suggested in the Court of Appeal's

8   opinion, rendered the judgment "unconstitutional."  Petitioner also complains that the California

9   Rehabilitation Center kept him in custody "well beyond [his] sentence."  (Id.)

10          In his third claim in the instant petition, petitioner argues that the sentencing judge

11   in the 1999 case improperly used petitioner's 1996 conviction to enhance his sentence by five

12   years, even though the judge had already ruled that the conviction was "unconstitutional" and

13   therefore could not be used as a "strike."  As he argued in the California Court of Appeal,

14   petitioner contends that when a prior conviction has been found to be constitutionally invalid, it

15   may not be used to enhance the punishment for a subsequent offense.[4]

16          Petitioner's challenges to his 1986 prior conviction are barred by Lackawanna v.

17   Coss, 532 U.S. 394 (2001).  In Lackawanna the Supreme Court held that where, as here, a

18   petitioner's state court conviction was later used to enhance a criminal sentence, "the defendant

19   generally may not challenge the enhanced sentence through a petition under § 2254 on the

20   ground that the prior conviction was unconstitutionally obtained."  532 U.S. at 403-04.  See also

21   Gill v. Ayer, 342 F.3d 911, 919 n.7 (9th Cir. 2003).  There are two exceptions to this general

22   rule: (1) petitions that challenge an enhanced sentence on the basis that the prior conviction used

23   to enhance the sentence was obtained in violation of the Sixth Amendment right to counsel, as

24
_____

25          [4]  The state court record reflects that petitioner's sentence was enhanced by two prior
     convictions: the 1986 burglary conviction and a 1993 conviction for discharging a firearm in a
     grossly negligent manner.  (RT at 715-18.)  Petitioner's sentence was not enhanced by his 1993

26   conviction for being a felon in possession of a gun.  (Id.)

8

1 set forth in Gideon v. Wainwright, 372 U.S. 335 (1963); and (2) situations where a habeas

2 petition directed at an enhanced sentence may effectively be the first and only forum available for

3 review of the prior conviction.  Lackawanna, 532 U.S. at 404-05.  Neither exception applies here;

4 accordingly, petitioner is precluded from collaterally attacking his prior convictions through a §

5 2254 petition.  See id. at 406.[5]

6   To the extent that petitioner's claims are not barred under Lackawanna, they fail

7 on their merits.  Petitioner's claim that his appellate counsel rendered ineffective assistance

8 because she failed to "follow through" with the decision of the California Court of Appeal is

9 belied by the record and the facts of this case.  As described above, after the Court of Appeal

10 issued its decision in 1986, petitioner's appellate counsel filed a petition for rehearing in the

11 California Court of Appeal and a petition for review in the California Supreme Court.  (Pet.,

12 Attach. 12(a), Ex. B.)  Counsel apparently chose, for tactical reasons, to proceed in that fashion

13 instead of withdrawing petitioner's guilty plea and proceeding to trial.  Under the circumstances

14 of this case, that decision was certainly reasonable.  Although the state appellate court in 1986

15 suppressed some of the evidence against petitioner, "much of the evidence implicating petitioner

16 [was] still admissible."  (Id.; Pet., Attach. 12(a), Ex. A at 15.)  Accordingly, it was far from

17 certain that petitioner would be acquitted if he chose to change his plea and proceed to trial.  In

18 addition, petitioner was committed to the CRC in 1986 and was able to obtain his release with

19

20

21  [5] Petitioner argues that his appellate counsel's failure in 1996 to effect a withdrawal of
his guilty plea following the decision of the California Court of Appeal constituted an
"abandonment," leaving him "without representation at a critical point in the proceedings."  (Pet.,

22 Attach 12(c) at 1.)  This court does not agree that petitioner's counsel abandoned him.  Although
counsel apparently chose not to advise petitioner to withdraw his guilty plea, she filed a petition

23 for rehearing in the California Court of Appeal and a Petition for Review in the California
Supreme Court challenging the decision of the appellate court.  Petitioner served his time in the

24 CRC and was released with time served.  The fact that counsel may have chosen to appeal
petitioner's conviction rather than withdrawing his guilty plea does not constitute an

25 abandonment, nor does it constitute a violation of the right to counsel.  Under these
circumstances, petitioner's 1986 conviction was not obtained in violation of the Sixth

26 Amendment.

1   time served in 1991.[6]  Counsel may have believed that it would be more beneficial to retain the

2   CRC placement than to risk a conviction and commitment to state prison after a trial.  Finally,

3   petitioner's assertions that he was not notified of the appellate court's decision in a timely

4   manner and that he would have withdrawn his guilty plea if he had been so informed are

5   unsupported by any record evidence and are insufficient to support a claim of ineffective

6   assistance of counsel.  Under the circumstances presented here, petitioner has not demonstrated

7   either substandard performance or prejudice resulting from appellate counsel's actions.  See

8   Strickland v. Washington, 466 U.S. 668 (1984).

9        This court also rejects petitioner's claim that his 1986 conviction is

10  "unconstitutional" because the trial court did not reinstate the judgment within thirty days, after

11  petitioner failed to withdraw his guilty plea.  Petitioner has failed to cite any caselaw to support

12  this position and the court has found none.  Petitioner's own conclusory statements do not

13  establish that his 1986 conviction was invalid or that it could not be used as an enhancement or

14  for impeachment purposes.  See Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995) (quoting

15  James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994)) ("'[c]onclusory allegations which are not

16  supported by a statement of specific facts do not warrant habeas relief'").  This court also notes

17  that the decision of the Court of Appeal gave petitioner a deadline of thirty days to file a motion

18  to withdraw his guilty plea; the decision does not appear to impose a deadline of any length on

19  the trial court's reinstatement of the judgment.  Further, to the extent the state court's rejection of

20  this claim is based on state law, it may not be set aside in this action.  See Estelle v. McGuire,

21  502 U.S. 62, 67-68 (1991) (a federal writ is not available for alleged error in the interpretation or

22  application of state law); Peltier v. Wright, 15 F.3d 860, 862 (1994) (state courts are "the

23  ultimate expositors of state law," and this court is "bound by the state's construction except when

24

---

25      [6]  Petitioner states that he was released from CRC on out-patient status in September,
    1987.  (Traverse at 2.)  However, even if petitioner was on out-patient status, his CRC
26  commitment was not terminated until 1991.  (Pet., Attach. 12(b), Ex. C.)

1    it appears that its interpretation is an obvious subterfuge to evade the consideration of a federal

2    issue." (quoting <u>Mullaney v. Wilbur</u>, 421 U.S. 684, 691 (1975)).  Finally, on collateral review a

3    petitioner cannot satisfy his burden of proving the constitutional invalidity of a conviction

4    "merely by pointing to a silent or ambiguous record."  <u>United States v. Mulloy</u>, 3 F.3d 1337,

5    1339 (9th Cir. 1993).  Rather, the petitioner must make an "affirmative showing" that overcomes

6    the presumption of regularity that accompanies final judgments of conviction.  <u>Id</u>. at 1340; <u>see</u>

7    <u>also</u> <u>Johnson v Zerbst</u>, 304 U.S. 458, 468-69 (1938) (when collaterally attacked, absent proof of

8    constitutional infirmity, judgment is presumed valid); <u>United States v. Newman</u>, 912 F.2d 1119,

9    1121 (9th Cir. 1990) ("in the context of considering a constitutional challenge to a prior

10   conviction in the criminal history calculation  . . . the ultimate burden of proof in demonstrating

11   the constitutional infirmity of the . . . conviction lies with the defendant").  The record is

12   ambiguous at best regarding the legal effect of the 1996 decision suppressing some of the

13   evidence against petitioner in connection with his burglary conviction.  Petitioner has failed to

14   made an "affirmative showing" of unconstitutionality sufficient to overcome the presumption

15   that his 1996 conviction is valid.

16          Petitioner's third claim is equally unavailing.  Petitioner's contention that his

17   1986 conviction was found to be "unconstitutional" simply because the sentencing judge used

18   that wording when he declined to use the conviction as a "strike" is meritless.  As explained by

19   the California Court of Appeal, the conviction was reinstated when petitioner declined to

20   withdraw his guilty plea and is therefore conclusively valid.  In addition, as noted, the state

21   appellate court merely ruled that certain evidence against petitioner was not inadmissible; it did

22   not declare the 1986 conviction "unconstitutional."  For all of these reasons, petitioner's first

23   three claims challenging the use of his prior convictions to enhance his sentence should be

24   denied.

25   /////

26   /////

11

1        B.  Ineffective Assistance of Counsel

2              Petitioner's next claim is that his trial attorney rendered ineffective assistance

3   because of twenty-one prejudicial errors.  After setting forth the relevant legal principles, the

4   court will evaluate these claims in turn below.

5              The Sixth Amendment guarantees the effective assistance of counsel.  The United

6   States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

7   Strickland v. Washington, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of

8   counsel, a petitioner must first show that, considering all the circumstances, counsel's

9   performance fell below an objective standard of reasonableness.  Id. at 687-88.  After a petitioner

10  identifies the acts or omissions that are alleged not to have been the result of reasonable

11  professional judgment, the court must determine whether, in light of all the circumstances, the

12  identified acts or omissions were outside the wide range of professionally competent assistance.

13  Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).  In assessing an ineffective assistance of

14  counsel claim "[t]here is a strong presumption that counsel's performance falls within the 'wide

15  range of professional assistance.'"  Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting

16  Strickland, 466 U.S. at 689).  There is in addition a strong presumption that counsel "exercised

17  acceptable professional judgment in all significant decisions made."  Hughes v. Borg, 898 F.2d

18  695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

19             Second, a petitioner must establish that he was prejudiced by counsel's deficient

20  performance.  Strickland, 466 U.S. at 693-94.  Prejudice is found where "there is a reasonable

21  probability that, but for counsel's unprofessional errors, the result of the proceeding would have

22  been different."  Id. at 694.  A reasonable probability is "a probability sufficient to undermine

23  confidence in the outcome."  Id.  See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224

24  F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not determine whether counsel's

25  performance was deficient before examining the prejudice suffered by the defendant as a result of

26  the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of

12

1  lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949,

2  955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

3             1.  Failure to Investigate the Validity of Petitioner's 1986 Prior Conviction

4            Petitioner claims that his trial counsel rendered ineffective assistance because of

5  her failure to investigate the circumstances of his 1986 prior conviction.  Petitioner argues that if

6  counsel had conducted a thorough investigation, she would have discovered that the conviction

7  was invalid and could not have been used to enhance his sentence or to impeach him with either

8  the 1986 burglary conviction or the 1993 conviction for being a felon in possession of a weapon.

9            The California Court of Appeal rejected petitioner's claim in this regard on direct

10  appeal.  The appellate court explained its reasoning as follows:

11            [Petitioner] first contends that his trial counsel failed to investigate
          the validity of [petitioner's] prior convictions.  He argues that,
12            since counsel succeeded in convincing the court to strike his 1986
          burglary conviction for purposes of the three strikes law, a pretrial
13            motion to strike would have prevented use of the conviction for
          impeachment purposes when he testified.
14
          We already have concluded the record does not support a claim
15            that the 1986 conviction was unconstitutionally obtained.  The fact
          counsel succeeded, through an argument unsupported by any
16            evidence, in convincing the court to spare [petitioner] the onerous
          punishment that would apply to a third strike conviction, does not
17            establish that [petitioner] was prejudiced by a failure to raise the
          issue sooner.
18

19  (Opinion at 13-14.)

20            The conclusion of the state appellate court that petitioner was not prejudiced by

21  his trial counsel's failure to investigate the validity of his 1986 prior conviction is not contrary to

22  federal law and should not be set aside.  For the reasons described above, petitioner's challenges

23  to his 1986 conviction are meritless.  Accordingly, trial counsel's failure to challenge the 1986

24  conviction on the grounds suggested by petitioner did not constitute ineffective assistance.  See

25  Jones v. Smith, 231 F.3d 1227, 1239 n. 8 (9th Cir.2000) (citing Boag v. Raines, 769 F.2d 1341,

26  1344 (9th Cir.1985) (an attorney's failure to make a meritless objection or motion does not

1 constitute ineffective assistance of counsel).  See also Rupe v. Wood, 93 F.3d 1434, 1445 (9th

2 Cir.1996) ("the failure to take a futile action can never be deficient performance").  In addition,

3 as noted by the state appellate court, counsel's performance at the sentencing proceedings was

4 extremely successful, preventing the imposition of a third strike sentence.  Because petitioner has

5 failed to show either substandard performance or prejudice, this claim should be denied.

6                      2.  Failure to Introduce 9-1-1 Tape

7              Petitioner's next claim is that his trial counsel rendered ineffective assistance

8 because of her failure to introduce a tape recording of the 9-1-1 call placed to the police

9 department from the fast food restaurant where the altercation took place.  Petitioner states that

10 the recording would have demonstrated that the police were called because petitioner was being

11 attacked, and not because petitioner was attacking someone else.

12              This claim was summarily rejected by all of the California courts to which it was

13 presented.  (Answer, Exs. E - K.)  Under these circumstances, the court must independently

14 review the record to determine whether habeas corpus relief is available.  Delgado, 223 F.3d at

15 982.

16              Petitioner has attached documentary evidence indicating that his trial attorney had

17 possession of the 9-1-1 tape from the fast food restaurant.  (Pet., Attach 12(d), Ex. B.)

18 Accordingly, her decision not to use the tape at petitioner's trial was a tactical decision and not

19 the result of inadequate investigation or other non-tactical error.  Where it is possible that the

20 failure to present evidence was a "difficult but thoughtful tactical decision," a reviewing court

21 must presume that counsel's conduct was "within the range of competency."  Harris v. Pulley,

22 885 F.2d 1354, 1368 (1988).  Indeed, "[c]ounsel's tactical decisions are 'virtually

23 unchallengeable.'"  Furman v. Wood, 190 F.3d 1002, 1006 (9th Cir. 1999) (citing Strickland, 466

24 U.S. at 687).  Accordingly, counsel's decision not to introduce the 9-1-1 tape into evidence is

25 presumptively competent.

26 /////

1    This court also notes that the opinion of the person making the 9-1-1 call

2    (presumably a store employee) as to the nature of the altercation would have little or no relevance

3    to petitioner's guilt or innocence.  Indeed, the caller told the police she did not actually see what

4    happened but called the police simply because someone came inside the restaurant and told her

5    there was a fight in progress in the parking lot.  (Pet., Attach. 12(d), Ex. C.)  The responding

6    officer testified that the call was "a disturbance, a group of people possibly fighting in the

7    parking lot." (RT at 124.)   Under these circumstances, petitioner has also failed to demonstrate

8    prejudice from trial counsel's failure to introduce the 9-1-1 tape into evidence.  For all of these

9    reasons, petitioner is not entitled to relief on this claim.

10                     3.  Failure to Obtain Store Videotape of Incident

11    Petitioner claims that his trial attorney rendered ineffective assistance when she

12    failed to obtain a surveillance videotape from the fast food restaurant.  He claims that the

13    videotape would have supported his version of the events.

14    This claim was summarily rejected by all of the California courts to which it was

15    presented.  (Answer, Exs. E - K.)  Under these circumstances, the court must independently

16    review the record to determine whether habeas corpus relief is available.  Delgado, 223 F.3d at

17    982.

18    Petitioner has submitted documentation which indicates that the surveillance

19    videotape from the fast food restaurant was destroyed one week after the incident occurred.

20    (Pet., Attach. 12(d), Ex. C.)  Although petitioner states that he informed his attorney of the

21    existence of the videotape prior to the time it was destroyed, there is no evidence to support

22    petitioner's claim that the videotape would support his version of the events.  Petitioner's

23    unsupported allegations about the content of the tape are insufficient to establish that he was

24    prejudiced by trial counsel's failure to obtain the tape and introduce it into evidence.  Jones, 66

25    F.3d at 204.  Accordingly, this claim should be denied.

26    /////

1        4.  Failure to Exclude Petitioner's Un-Mirandized Statements

2              Petitioner claims that his trial attorney rendered ineffective assistance because of

3    her failure to move to exclude statements made by petitioner to a police officer in violation of

4    Miranda v. Arizona, 384 U.S. 436 (1966).[7]  In support of this claim, petitioner has attached a

5    police report which states that after Officer Duchene found a plastic baggy containing marijuana

6    in petitioner's car, he said, "so that's what you had in your left front pocket when I searched

7    you."  (Pet., Attach. 12(d), Ex. D.)  According to the report, petitioner responded, "ya, I know

8    you felt it" and explained, "it's mine not my boys, he doesn't smoke pot."  (Id.)

9              Respondent argues that Officer Duchene's statement did not constitute an

10   interrogation and that petitioner simply volunteered incriminating information.  Petitioner

11   counters that the police report does not accurately reflect the entire conversation and that some of

12   the interrogation questions asked by Officer Duchene are omitted from the report.  Petitioner

13   argues that, because the report is incomplete, his trial counsel should have moved to exclude all

14   of his statements to the officer.

15             Under the circumstances presented here, petitioner's counsel was not ineffective

16   in failing to move to exclude petitioner's statements to the police officer about the marijuana.

17   Petitioner's unsupported assertion that the police report omits crucial questions asked by Officer

18   Duchene is too speculative to support this claim.  Further, not every question asked in a custodial

19   setting constitutes "interrogation."  United States v. Mata-Abundiz, 717 F.2d 1277, 1278 (9th

20   Cir.1983)  The test for determining when questioning is an "interrogation" is "whether 'under all

21

22        [7]  In Miranda v. Arizona, the Supreme Court established the rule that, during a custodial
     interrogation, an accused:

23              ... must be warned prior to any questioning that he has the right to
24              remain silent, that anything he says can be used against him in a
                court of law, that he has the right to the presence of an attorney,
                and that if he cannot afford an attorney one will be appointed for
25              him prior to any questioning if he so desires.

26   384 U.S. 436, 478-79 (1966).

the circumstances involved in a given case, the questions are reasonably likely to elicit an incriminating response from the suspect.'" Id. (quoting United States v. Booth, 669 F.2d 1231, 1237 (9th Cir.1981) (quoting Rhode Island v. Innis, 446 U.S. 291, 301 (1980))).  A reading of the police report does not support petitioner's claim that he was subject to an interrogation when the officer stated, "so that's what you had in your left front pocket when I searched you."  The officer's remark was not in the form of a question and did not call for an answer of any kind, incriminating or not.

Further, a Miranda violation is subject to harmless error analysis.  Arnold v. Runnels, 421 F.3d 859, 867 (9th Cir. 2005); Juan H. v. Allen, 408 F.3d 1262, 1271 n.9 (9th Cir. 2005).  Petitioner has not demonstrated that his statement to Officer Duchene about the marijuana had any impact on the verdict in this case.  Accordingly, there is no reasonable probability that the result of petitioner's trial would have been different even if counsel had filed a motion to exclude the statement.  For all of these reasons, this claim should be denied.

### 5.  Failure to Obtain a Videotape from the Woodland Courthouse

Petitioner's next claim is that his trial counsel rendered ineffective assistance when she failed to obtain a videotape from the Yolo County Superior Court which would depict the prosecutor speaking to petitioner prior to his arraignment but outside the presence of petitioner's counsel.  In support of this claim, petitioner has attached a partial transcript of his preliminary hearing, wherein petitioner's trial attorney informed the preliminary hearing judge that an incident had occurred which petitioner wanted the judge to be made aware of.  (Pet., Attach 12(d), Ex. E.)  Counsel explained:

> I will make a statement for the record.  Yesterday, when Mr. Santos was brought into Department Eight with the rest of the in-custodies, he was seated in the front row toward the right as you face the jury box.  Mr. Raven [the prosecutor] and I had been discussing whether or not it would be advisable for Mr. Santos to waive the ten-day rule so that both of us, each side could do further investigation, because there are numerous witnesses that need to be interviewed.

I discussed this matter with Mr. Santos.  I believe Mr. Raven may have been standing nearby, but I do not know whether he was listening or not.  In any event, Mr. Santos said to both of us, "I'm not giving up any rights.  I'm not going to waive time.  I'm not waiving anything."  And at that point, I believe I introduced Mr. Raven as the prosecutor and told Mr. Santos that it could be to his advantage to have some additional investigation done.

After this discussion and Mr. Santos continued to refuse to waive time, he began to complain that I had inveigled him into discussing material about his case with a DA without his knowledge.  At that point he complained that I disclosed a defense tactic that the prosecutor would not necessarily have recognized and also claimed that he believed Mr. Raven was my associate.

And I wanted to put that on the record only to refute it in a number of respects.  One is that Mr. Raven was introduced as a prosecutor.  There was some discussion in front of Mr. Santos between Mr. Raven and I about why more witnesses should be interviewed.  I raised the issue of self-defense; if self-defense is the defense, than it would be to Mr. Santos' advantage to have further investigation done.  And that was about the extent of the conversation.

I believe Mr. Santos, after Mr. Raven and I had left, tried to put on the record in front of Judge Johnson that he felt his defense had been impaired in some respect by this little colloquy.

I am making the statement now that in no way, shape or form were any material facts regarding this matter discussed with the prosecutor and Mr. Santos or in front of the prosecutor between myself and Mr. Santos.  The only item for discussion was whether or not additional time should have – should be given to each side in order to either help refute the charges that have been placed against him or develop additional information about the charges that have been alleged.

(Id.)  Petitioner states that his counsel did not accurately explain the problem to the trial judge.

Petitioner claims that while he was sitting in the jury box waiting for his arraignment, the

prosecutor approached and spoke to him about the charges outside the presence of his attorney,

and without identifying himself as the prosecutor.  Specifically, petitioner states the prosecutor

asked him

Who hit Mr. David Latham on the head with a bat?  Petitioner responded he did not hit anybody with a bat.  Mr. Raven then said well, if you didn't hit Mr. Latham who did?  Petitioner answered "No one."  Mr. Raven then went on to say well according to the police report someone hit him.  Petitioner at that point, tells Mr.

1
2

> Raven to get the surveillance camera that was on during the
> incident at Carl's Jr. and it would clear up this whole mess.  The
> tape could speak for itself.

3   (Traverse at 63.)  Petitioner states that his trial counsel was not present during this conversation

4   and that her statements to the preliminary hearing judge attempting to explain the situation were

5   incorrect.  (Id.)  He explains that the ex parte discussion he relates occurred prior to the

6   conversation described by his trial counsel.  Petitioner states that "there was a courtroom camera

7   behind him filming this conversation with the district attorney" and that the film would have

8   "documented the inappropriate behavior of the district attorney."  (Pet., Attach 12(e); Traverse at

9   62.)

10          Petitioner's claim that his trial counsel rendered ineffective assistance because of

11  her failure to obtain the courtroom videotape should be denied.  Petitioner's unsupported

12  contention that a videotape exists depicting the prosecutor speaking to him outside the presence

13  of his attorney, and that the substance of the conversation would be apparent from a videotape, is

14  too vague and speculative to support this claim.  Jones v. Gomez, 66 F.3d 199, 204.  Even

15  assuming that petitioner's version of the events is accurate, petitioner has failed to establish that

16  he was prejudiced by the conversation with the prosecutor or that the prosecutor's actions in

17  speaking to him outside the presence of his counsel rendered his trial fundamentally unfair.  The

18  substance of the conversation, as related by petitioner, does not provide any new or exculpatory

19  evidence, nor does it provide any other reason to question the verdict in this case.  Accordingly,

20  petitioner is not entitled to relief on this claim.

21          6.  Failure to Request CALJIC No. 5.51

22          Petitioner claims that his trial counsel rendered ineffective assistance when she

23  failed to request that the court instruct the jury with CALJIC 5.51.  This claim was rejected by

24  the California Court of Appeal on petitioner's direct appeal with the following reasoning:

25      [Petitioner] complains that counsel failed to ask the trial court to
        instruct the jurors with CALJIC No. 5.51, which provides: "Actual
26      danger is not necessary to justify self-defense.  If one is confronted

19

by the appearance of danger which arouses in [his] [her] mind, as a reasonable person, an actual belief and fear that [he] [she] is about to suffer bodily injury, and if a reasonable person in a like situation, seeing and knowing the same facts, would be justified in believing [himself] [herself] in like danger, and if that individual so confronted acts in self-defense upon these appearances and from that fear and actual beliefs, the person's right of self-defense is the same whether the danger is real or merely apparent."

The trial court fully instructed the jury on self-defense with CALJIC No. 5.30 [self-defense against assault], CALJIC No. 5.31 [assault with fists– when use of deadly weapon not justified], CALJIC No. 5.32 [use of force in defense of another]; CALJIC No. 5.50 [self-defense – assailed person need not retreat]; CALJIC No. 5.52 [self-defense – when danger ceases], and CALJIC No. 5.55 [plea of self-defense may not be contrived].

None of these instructions suggested the danger that gives rise to self-defense must be actual rather than apparent.  All of them were couched in terms of whether [petitioner] had a reasonable belief in the need to defend himself or others.

Under the circumstances, although CALJIC No. 5.51 would have been a proper instruction, defense counsel was not constitutionally deficient for failing to request it when the other self-defense instructions adequately covered the issue.

(Opinion at 14-15.)  The Court of Appeal's decision with respect to this claim is not contrary to or an unreasonable application of clearly established federal law, as determined by the United States Supreme Court.  When viewed in their entirety, petitioner's jury instructions adequately informed the jurors of the substance of CALJIC No. 5.51.  Trial counsel's failure to request this cumulative jury instruction does not constitute ineffective assistance.  Accordingly, petitioner is not entitled to relief on this claim.

       7.  <u>Shackling</u>

       Petitioner claims that his trial counsel rendered ineffective assistance when she failed to request a mistrial after several jurors saw him in handcuffs.  (Pet., Attach. 12(d) at 4.) Petitioner asserts that an evidentiary hearing is necessary to determine "what the jurors saw and whether it was so inherently prejudiced [sic] that it threatened the fairness of the trial."  (Traverse

/////

1    at 28.)   The state court record reflects the following discussion during the trial proceedings

2    regarding the issue of petitioner's shackles:

3              THE COURT: Back on the record on the Santos matter.  Outside
               the presence of the potential jurors.  There are a couple of things
4              we need to address.  Mr. Santos, I understand you got a trip to the
               bathroom, yes.
5
               THE DEFENDANT: Yes ma'am.  Thank you.
6
               THE COURT: And apparently your leg brace was bothering you
7              and have we made an effort to address that.

8              Could you state your name for the record?

9              THE BAILIFF: Sergeant Larry Cecchettini with Yolo County
               Court Services.
10
               Mr. Santos brought to the attention of one of our deputies the leg
11             brace that was fitted under his pants for jury trial purposes was
               irritating his ankle, after we confirmed it was red and little bit
12             swollen we have rigged up a belly chain which now goes around
               his waist.  There is a short portion, about eight inches that comes
13             out the back of his shirt, the rest is hidden by the shirt.  There is
               small tail which comes out and is locked to the wooden chair that
14             he's seated in.

15             Mr. Santos seems to be comfortable with that.

16             THE DEFENDANT: Other than the fact four jurors saw me
               handcuffed on the way down.  They were the ones sitting in the
17             panel.  I felt that they looked at me like they was surprised that they
               seen me all handcuffed like that, and three or four of them seen me
18             on my way down yesterday, they didn't do that ma'am.  They let
               me walk out in front of the jurors without being handcuffed.
19
               THE BAILIFF: Yesterday elevator was working Your Honor,
20             today it is not.  We had to take him down the stairs because –

21             THE COURT: It is my understanding there has been every effort to
               make sure jurors don't see you handcuffed, apparently the elevator
22             was not working and in order to take you downstairs to the
               bathroom they had to cuff you.
23
               THE BAILIFF: Your Honor, beg pardon I escorted Mr. Santos
24             across and just to make it known he did create quite a scene going
               across.  Every time he saw a juror he became quite verbal, there is
25             Juror, they're not suppose to see me and I did everything I could to
               try to avoid ever seeing him, but I had no choice.
26

21

1    THE COURT: Mr. Santos, it is my understanding from what the
     Bailiff said they made very effort to – at your request to take you to
2    the bathroom, but that apparently you drew attention to yourself
     concerning the handcuffs.
3
     So, we'll note that for the record and we'll make every effort, of
4    course, to make sure that you are not handcuffed in front of the
     jury, but you can't defeat that – your own purpose by announcing
5    it.

6    THE DEFENDANT: I didn't announce it.  We ran into them on the
     way down.
7
     THE COURT: I understand.  You told me what you said happened
8    and I have for the record put what the deputy said happened, so
     that's the record of the situation.
9
     There was an unavoidable circumstance because of your need to go
10   to the bathroom to go downstairs, apparently there were three or
     four people who may or may not be jurors, I don't know, but
11   apparently from what the deputy said you announced to them that
     they were jurors and that they weren't supposed to see you with the
12   handcuffs, so that's the record.

13   (RT at 99-101.)

14          Petitioner's claim in this regard was summarily rejected by all of the California

15   courts to which it was presented.  (Answer, Exs. E - K.)  Under these circumstances, the court

16   must independently review the record to determine whether habeas corpus relief is available.

17   Delgado, 223 F.3d at 982.

18          Shackling a criminal defendant is "inherently prejudicial." Deck v. Missouri, 544

19   U.S. 622, 125 S.Ct. 2007, 2011 (2005) (quoting Holbrook v. Flynn, 475 U.S.560, 568 (1986)).

20   "Thus, the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the

21   jury absent a trial court determination, in the exercise of its discretion, that they are justified by a

22   state interest specific to a particular trial. Deck, 125 S.Ct. at 2012.  However, a jury's brief or

23   inadvertent glimpse of a defendant in physical restraints outside of the courtroom is not

24   inherently or presumptively prejudicial.  See e.g., Ghent, 279 F.3d at 1132 (jurors' view of

25   defendant in the hallway and being transported in restraints on several occasions not unduly

26   prejudicial); United States v. Olano, 62 F.3d 1180, 1190 (9th Cir.1995) (same).  In cases where

                                              22

jurors observe a defendant in shackles outside of the courtroom, actual prejudice must be demonstrated.  Wilson v. McCarthy, 770 F.2d 1482, 1485-86 (9th Cir.1985) (a jury's brief, inadvertent observation of a defendant in custody does not compel reversal in the absence of an affirmative showing of actual prejudice); United States v. Halliburton, 870 F.2d 557, 560-61 (9th Cir.1989) (same).  See also Dupont v. Hall, 555 F.2d 15, 17 (1st Cir.1977) (noting that even the "most unsophisticated juror" knows that defendants may have to post bail and that some lack the resources to do this); United States v. Leach, 429 F.2d 956, 962 (8th Cir.1970) ("[i]t is a normal and regular as well as a highly desirable and necessary practice to handcuff prisoners when they are being taken from one place to another, and the jury is aware of this").

It appears from the record that a few members of petitioner's jury viewed him in restraints when an elevator failure required the bailiff to escort petitioner to the bathroom in view of these jurors.  It also appears from the record that petitioner may have deliberately drawn attention to himself in order to create the appearance of prejudice.  After hearing the parties' conflicting version of the events, the trial judge warned petitioner not to deliberately draw attention to himself if he was inadvertently seen by the jurors in handcuffs.  Under these circumstances, petitioner's trial counsel did not act outside the "wide range of professional assistance" in declining to ask for a mistrial.  Accordingly, this claim should be denied.

### 8.  Failure to Subpoena Medical Records of the Victim

Petitioner's next claim is that his trial counsel rendered ineffective assistance because she did not subpoena the victim's medical records.  Petitioner contends the medical records would have demonstrated that the victim was not a credible witness because he had "a mental disease or defect related to his H.I.V. status" and that had the judge been made aware of this she "would have ruled [the victim] mentally unable to testify."  (Pet., Attach 12(d) at 5; Traverse at 30.)  Petitioner states that his trial counsel was aware of the victim's "mental condition" and the fact that he was taking medication prior to trial but that she still failed to develop and present evidence concerning his mental health.  (Traverse at 31.)

1    The state court record reflects that although the defense made a discovery request

2 for the victim's disability information prior to trial, it was disclosed for the first time during the

3 victim's testimony that he was HIV positive.  (RT at 185, 199.)[8]  In response to this unanticipated

4 information, petitioner's counsel requested a continuance and a summary of the victim's mental

5 health history in order to determine whether there was any information that could be used to

6 impeach the victim's credibility and his ability to correctly remember the events in question.  (Id.

7 at 185-87, 192, 202, 212.)  Counsel explained that she had previously but unsuccessfully asked

8 the prosecutor for a summary of the victim's mental health history and his disability records so

9 that she could determine whether or not to subpoena any additional records.  (Id. at 191, 195,

10 197.)  In order to proceed with the trial and dispense with a continuance to obtain medical

11 records, petitioner's counsel offered to withdraw her request for a continuance "and any potential

12 request for mistrial" if she could question the victim about his mental and medical health history

13 and status.  (Id. at 202-03, 204-05.)  The trial court suggested that the defense question the victim

14 outside the presence of the jury pursuant to Cal. Evid. Code § 402 to determine whether his

15 mental/medical health had any impact on his credibility.  (Id. at 206.)[9]

16    Subsequently, petitioner's trial counsel questioned the victim extensively about

17 his mental and medical health and his ability to remember the events in question.  (Id. at 212-25.)

18 The victim explained that he obtained SSI benefits after he learned he was HIV positive and that

19 he was placed "on a conservatorship" because of depression.  (Id. at 213-16.)  He testified he had

20 consumed two beers on the night of the altercation.  (Id. at 222.)  He also testified that he was on

21 significant medication for his HIV condition.  (Id. at 223.)  Upon examination by the trial judge,

22

23    [8]  The discovery documents revealed that the victim was on disability and that he had a
24 "mental health condition."  (Id. at 190.)

25    [9]  Cal. Evid. Code § 402 provides, in relevant part, that a trial court "may hear and
determine the question of the admissibility of evidence out of the presence or hearing of the
26 jury."

1   the victim denied taking medication for depression or any medication that would affect his ability

2   "to understand what is going on here" and denied suffering "any kind of brain changes or

3   dementia or anything like that."  (Id.)  He also denied taking any such medication on the day of

4   the altercation.  (Id. at 224.)  After the conclusion of the victim's testimony, petitioner's trial

5   counsel withdrew all pending motions.  (Id. at 226.)

6         After a careful review of the record, this court concludes that petitioner's trial

7   counsel did not render ineffective assistance because of her failure to subpoena the victim's

8   medical records.  Counsel's attempts to obtain information relevant to the victim's credibility and

9   her actions once she learned the victim was HIV positive were reasonable under the

10   circumstances and fell within the wide range of reasonable professional assistance.  Respondent

11   argues that petitioner's counsel made an "informed strategic decision" that further investigation

12   of the victim's actual medical records would not reveal any significant information for

13   impeachment purposes.  This court agrees.

14         Petitioner argues that his trial counsel should have obtained the victim's medical

15   records because they might reflect that he "has a mental disease or defect related to his H.I.V.

16   status, whether or not he has been diagnosed with any disease that impairs brain function."

17   (Traverse at 30.)  Petitioner's speculation as to what the medical records might contain is

18   insufficient to establish the prejudice prong of his claim of ineffective assistance of counsel.

19   Accordingly, this claim should be denied.

20         9.  Petitioner's Failure to Impeach the Victim at the 402 Hearing

21         Petitioner's next claim is that his trial counsel rendered ineffective assistance

22   when she failed to impeach the victim in front of the jury with a prior inconsistent statement he

23   made at the § 402 hearing described above.  Respondent contends that this claim has not been

24   exhausted in state court.  Even assuming arguendo that petitioner has failed to exhaust this claim,

25   it should be denied pursuant to 28 U.S.C. § 2254(b)(2) ("[a]n application for a writ of habeas

26   corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the

remedies available in the courts of the State"). <u>See also</u> <u>Cassett v. Stewart</u>, 406 F.3d 614, 624

(9th Cir.2005) (a federal court considering a habeas petition may deny an unexhausted claim on

the merits when it is perfectly clear that the claim is not "colorable").

The victim testified at the 402 hearing that he was taking significant medications

for HIV on the date of the altercation and that he told hospital personnel he was HIV positive.

(RT at 217, 219.)  He also testified as follows:

> A.  Did you tell or did someone else tell – any one at the hospital –
> at the emergency room that you did not take any medications?
>
> A.  That I did not take –
>
> Q.  Did not, you were not on any medications?
>
> A.  No, that's wrong.  I always take – I have to take them all the
> time.

(Id. at 222.)  The treating physician at the hospital testified that the victim told him he was not

taking any medications.  (<u>Id.</u> at 331-32.)  Petitioner argues that his trial counsel rendered

ineffective assistance because of her failure to impeach the victim with his inconsistent statement

that he did not tell hospital personnel he was not taking any medications.

The court first notes that the victim's testimony at the 402 hearing was a vague

and non-responsive answer to a compound question.  In fact, the victim did not categorically

deny that he told a physician he was not taking any medications.  For this reason, it is not entirely

clear that the victim was "lying about taking medication."  (Traverse at 35.)  In any event, the

substance of these remarks is not particularly relevant to these proceedings in light of the fact that

there was no evidence the victim's medications rendered him incapable of remembering the

events in question and/or testifying in a truthful manner.  Further, in light of the evidence against

petitioner, counsel's failure to question the victim about the alleged inconsistency between these

two statements does not undermine confidence in the verdict.  For all of these reasons, this claim

should be denied.

/////

1          10. <u>Failure to Impeach Victim with Conflicting Statements</u>

2          Petitioner claims that his trial counsel rendered ineffective assistance when she

3 failed to impeach the victim with conflicting statements he made about his previous contacts

4 with petitioner.  The following facts comprise the background to this claim.

5          The victim told a police officer at the scene that petitioner previously threw a

6 Christmas tree through his window and set his residence on fire.  (Pet., Attach 12(d), Ex. J

7 (police report dated February 2, 1999).)  Indeed, the victim had filed a police report alleging that

8 several unseen suspects had set fire to a garbage can outside his trailer and had thrown a

9 Christmas tree through a window.  (<u>Id.</u> (police report dated January 10, 1999).)  At petitioner's

10 preliminary hearing, however, the victim testified that he had known petitioner for approximately

11 three months, that he had not had any previous confrontations with petitioner, and that most of

12 their contact occurred when petitioner's son came to play with the victim's niece.  (RT at 12-14.)

13 At trial, the victim testified, in a similar manner, that he was an acquaintance of petitioner's and

14 that they had limited contact through petitioner's son and the victim's niece.  (<u>Id.</u> at 170-71.)

15 Petitioner's trial counsel did not impeach the victim with the alleged inconsistency between his

16 accusations that petitioner started a fire at his residence and threw a Christmas tree through his

17 window and his testimony that he and petitioner had only limited contact and no previous

18 confrontations.

19          This claim was summarily rejected by all of the California courts to which it was

20 presented.  (Answer, Exs. E - K.)  Under these circumstances, the court must independently

21 review the record to determine whether habeas corpus relief is available.  <u>Delgado</u>, 223 F.3d at

22 982.

23          Even assuming arguendo that the victim's above-described statements were

24 inconsistent, petitioner has failed to demonstrate that counsel's decision not to impeach the

25 victim's testimony with these statements was outside the wide range of reasonable professional

26 assistance.  The questionable impeachment value of these inconsistencies was far outweighed by

the possible prejudicial effect of evidence indicating petitioner may have committed other acts of violence against the victim.  Counsel's reasonable tactical decision to refrain from impeaching the victim with his prior statements was certainly reasonable under the circumstances of this case.  Accordingly, this claim should be denied.

### 11. Failure to Call Trailer Park Manager as a Witness

Petitioner claims that his trial counsel rendered ineffective assistance when she failed to call as a witness the manager of the trailer park where petitioner and the victim resided to testify that petitioner was not the person who set the fire at the victim's residence.  He contends that his testimony "could of been additional evidence that David Latham lied to police about petitioner setting the trailor fire and very strong evidence that petitioner had no prior conflict with Latham, thus challenging Latham's credibility."  (Pet., Attach 12(d) at 7.)

As discussed above, counsel's tactical decision not to voluntarily introduce the issue of petitioner's possible role in setting a fire at Latham's residence did not fall below an objective standard of reasonableness.  The possible prejudicial effect of this evidence far outweighed any potential benefit for impeachment purposes.  Accordingly, this claim should also be denied.

### 12. Failure to Impeach Erica McCurry

Petitioner claims that his trial counsel rendered ineffective assistance when she failed to impeach Erica McCurry, a trial witness, with a prior false statement.  The background to this claim is as follows.  Erica McCurry was the driver of the car in which the victim was a passenger.  (RT at 249; Pet., Attach. 12(d), Ex. L.)  She told a police officer at the scene that petitioner instigated the violence at the fast food restaurant.  (Pet., Attach. 12(d), Ex. L.)  She also stated that "this is an ongoing problem with Raymond.  Before this incident, [the victim's] trailer on F Street was set fire when a Christmas tree was lit and thrown through the window.  She says this is because [petitioner] has a problem with [the victim] being 'Gay'."  (Id.)  At trial, Ms. McCurry also testified that petitioner instigated the violence against the victim at the fast

28

food restaurant.  (RT at 258-66.)  Petitioner claims that his trial counsel rendered ineffective

assistance when she failed to impeach Ms. McCurry with her untrue statement at the scene that

petitioner and the victim had "an ongoing problem."  (Pet., Attach 12(d) at 8.)  Petitioner

explains:

> Had my lawyer confronted Erica McCurry with this statement after
> proving David Latham was lying about petitioner setting the fire.
> The jury would have known McCurry was also lying about
> petitioner setting the fire.  The jury would of thought if McCurry
> was capable of lying to the police about on going problems
> between petitioner and [the victim] and also about petitioner
> setting the fire then she is capable of lying on the stand about the
> alleged assault on [the victim] with a bat.

(Id.)

Respondent contends that this claim has not been exhausted in state court.  Even

assuming arguendo that petitioner has failed to exhaust this claim, it should be denied pursuant to

28 U.S.C. § 2254(b)(2).  As discussed above, any possible impeachment value of Ms. McCurry's

statements about the fire at the victim's residence would have been outweighed by the potential

harm caused by evidence that petitioner may have committed acts of violence against the victim

because he was gay.  Further, as noted by respondent, it was not possible to prove the truth or

falsity of any accusation that petitioner started the fire at the victim's residence.  According to the

police report, the perpetrators of the fire were not identified by the reporting parties and the case

was "filed inactive" without any resolution.  (Pet., Attach 12(d), Ex. J (police report dated

January 28, 1999.)  Petitioner's trial counsel acted reasonably in declining to pursue this line of

questioning.  Accordingly, this claim should be denied.

### 13.  Failure to Impeach Victim with Statement to Officer Stevens

Petitioner claims that his trial counsel rendered ineffective assistance when she

failed to impeach the victim with inconsistent statements regarding whether his sister got

involved in the physical altercation at the fast food restaurant or whether she remained seated in

her vehicle.  The victim told a police officer at the scene that his sister, Melody Latham, did not

1   get out of her car and was not involved in the fight. ( Pet., Attach 12(d), Ex. M.)  At trial, the

2   victim testified that after petitioner hit him with the bat, his sister got out of the car and

3   approached, but petitioner kept her from getting too close by swinging the bat at her, causing her

4   to fall down. (RT at 148-49.) Petitioner argues that these statements are inconsistent and that his

5   trial counsel was ineffective in failing to impeach the victim with the inconsistencies.  He argues,

6   "had the jury known [the victim] told the police one story and testified to something else

7   completely different on numerous occasions the outcome of the trial would have been different."

8   (Pet., Attach 12(d) at 9.)

9          Respondent contends that this claim has not been exhausted in state court.  Even

10  assuming arguendo that petitioner has failed to exhaust this claim, it should be denied pursuant to

11  28 U.S.C. § 2254(b)(2).  The victim's statements, described above, were not "inconsistent," but

12  were merely describing different events during the altercation: the fight itself, in which the

13  victim's sister was not involved; and its aftermath, in which she was.  Petitioner's trial counsel

14  did not render ineffective assistance because of her failure to "impeach" the victim with these

15  statements.  Accordingly, this claim should be denied.

16                    14.  Failure to Impeach Melody Latham

17         Petitioner claims that his trial counsel rendered ineffective assistance when she

18  failed to impeach Melody Latham, the victim's sister, with several allegedly inconsistent

19  statements.  First, Ms. Latham told a police officer prior to petitioner's trial that "Little Ray"

20  (petitioner's son) swung the bat at her, causing her to fall to the ground.  (Pet., Attach 12(d), Ex.

21  N.)  Second, she told the officer that petitioner owed the victim $60, and that the victim

22  approached petitioner at the fast food restaurant to ask him to pay it back.  (Id.)  She also stated

23  that her mother "had no knowledge" of the debt owed to the victim by petitioner.  (Id.)  At trial,

24  however, Ms. Latham testified that petitioner swung the bat at her and caused her to fall to the

25  ground.  (RT at 349-50.)  She also testified that her mother was aware that the victim had loaned

26  money to petitioner.  (Id. at 360.)  Petitioner claims that his trial counsel knew about these

1  inconsistencies in Ms. Latham's various statements but failed to challenge her on the witness

2  stand.  He claims that "had the jury known Melody lied about who swung at her when she fell

3  and also lied about her mom having knowledge about the money the outcome of the trial would

4  have been different."  (Pet., Attach 12(d) at 10.)

5         Respondent contends that this claim has not been exhausted in state court.  Even

6  assuming arguendo that petitioner has failed to exhaust this claim, it should be denied pursuant to

7  28 U.S.C. § 2254(b)(2).  Petitioner has failed to demonstrate any prejudice resulting from the

8  failure of his trial counsel to question Ms. Latham about these inconsistencies.  Whether it was

9  petitioner or his son who swung the baseball bat at Ms. Latham, and whether Ms. Latham's

10 mother knew that petitioner owed a debt to her son, were not material issues at petitioner's trial.

11 As respondent points out, the evidence established that both petitioner and his son struck the

12 victim, and there was no dispute that the debt between petitioner and the victim was the cause of

13 anger between them.  Under the circumstances of this case, there is no reasonable probability

14 that, but for counsel's failure to highlight these de minimus inconsistencies in the testimony of

15 Melody Latham, the result of the proceeding would have been different.  Accordingly, petitioner

16 is not entitled to relief on this claim.

17           15.  <u>Failure to Impeach the Victim with Inconsistent Statements</u>

18        Petitioner claims his trial counsel rendered ineffective assistance when she failed

19 to impeach the victim with allegedly inconsistent statements regarding whether petitioner or his

20 son "hit him on the head with a bat causing the cut."  (Pet., Attach. 12(d) at 10.)  Petitioner

21 argues that "the impeachment of this serious issue was essential to the defense because it went to

22 the heart of the guilt or innocence of the petitioner."  (<u>Id.</u>)  Respondent contends that this claim

23 has not been exhausted in state court.  Even assuming arguendo that petitioner has failed to

24 exhaust this claim, it should be denied pursuant to 28 U.S.C. § 2254(b)(2).

25        The state court record contradicts petitioner's assertion that his trial counsel failed

26 to question the victim about his various statements regarding the identity of his attacker.  The

victim testified at the preliminary hearing that petitioner hit him on the forearm with the bat and petitioner's son hit him on the head with the bat.  (RT at 23-24.)  The victim also testified that he was hit with the bat by both petitioner and his son and that "they both were taking turns with the bat."  (Id. at 24.)  At trial, the victim testified that he wasn't sure who hit him on the head, but he believed that both petitioner and his son did so.  (Id. at 242, 244, 245.)  These statements do not reflect inconsistency as much as confusion about whether petitioner or his son inflicted specific injuries.  In any event, the record makes clear that petitioner's trial counsel asked the victim to clarify who hit him and where he was hit, and reminded the victim that at the preliminary hearing he had testified that petitioner's son inflicted the head injury.  (Id. at 242.)  Petitioner has failed to establish either substandard performance or prejudice with respect to trial counsel's impeachment of the victim with these statements.  Accordingly, this claim should be denied.

### 16.  Failure to Impeach Victim with Prior Arrests and Convictions

Petitioner claims that his trial counsel rendered ineffective assistance when she failed to impeach the victim with two nine-year old misdemeanor convictions, arising out of the same incident, for driving under the influence and resisting arrest.  (Pet., Attach 12(d), Ex. P.)  Petitioner argues that if the jury "had heard about [the victim's] prior violent conduct, they would have had a strong reason to believe that he was the agressor in the present case too."  (Pet., Attach 12(d) at 13.)  This claim was summarily rejected by all of the California courts to which it was presented.  (Answer, Exs. E - K.)  Under these circumstances, the court must independently review the record to determine whether habeas corpus relief is available.  Delgado, 223 F.3d at 982.

The state court record reflects that the prosecutor filed a motion in limine to preclude any mention of the victim's prior misdemeanor convictions on the grounds that they were remote, irrelevant, unduly prejudicial, did not involve moral turpitude, and had not been sufficiently established by the defense.  (Pet., Attach 12(d), Ex. P.)  Petitioner's trial counsel did

/////

1  not oppose the motion and the trial court excluded any evidence of these misdemeanor

2  convictions.  (Id.)

3        This court concludes that petitioner's trial attorney did not render ineffective

4  assistance when she declined to oppose the prosecutor's motion in limine.  Opposition to a

5  motion to exclude the victim's nine-year old misdemeanor convictions would in all likelihood

6  have been futile.  As discussed above, an attorney's failure to make a meritless objection or

7  motion does not constitute ineffective assistance of counsel.  Jones v. Smith, 231 F.3d at 1239 n.

8  8; Rupe, 93 F.3d at 1445.

9        Petitioner has also failed to show prejudice resulting from his trial counsel's

10  decision to concede the prosecutor's motion in limine.  There is no reasonable likelihood the trial

11  judge would have denied the motion in limine even if the defense had opposed it.  There is also

12  no reasonable likelihood petitioner's jury would have acquitted him simply because the victim

13  was convicted of two misdemeanors involving a DUI nine years prior to the events at issue at

14  petitioner's trial.  Accordingly, petitioner's claim that his counsel rendered ineffective assistance

15  in failing to impeach the victim with his prior misdemeanor convictions should be denied.

16        17.  Failure to Challenge the Testimony of Sabrina Hernandez

17        Petitioner claims that his trial counsel rendered ineffective assistance when she

18  failed to impeach Sabrina Hernandez, a passenger in the victim's car, about: (1) whether the

19  victim spotted petitioner's car before they entered the parking lot of the fast food restaurant or

20  while they were in line waiting to order; and (2) whether the victim approached petitioner's car

21  alone or with anyone else from his vehicle.  Respondent contends that this claim has not been

22  exhausted in state court.  Even assuming arguendo that petitioner has failed to exhaust this claim,

23  it should be denied pursuant to 28 U.S.C. § 2254(b)(2).

24        Sabrina Hernandez told a police officer at the scene that "as they went around the

25  corner from Harbor Blvd. to Evergreen Ave. [the victim] saw [petitioner] with his son in the

26  drive-thru of Carl's Jr." and that the victim said he "wanted to talk with [petitioner] to see if he

1   had the money he owed [the victim]." ( Pet., Attach 12(d), Ex. Q.)  At trial, Mr. Hernandez

2   testified that "we were going to get something to eat because Floyd Niepert was still hungry.  We

3   pulled up and [the victim] is like, there is his car; he's like, I'll go see if he has my money."  (RT

4   at 295.)   Petitioner contends that this testimony is "inconsistent" and that evidence indicating the

5   victim followed petitioner into the restaurant in order to collect a debt, as opposed to seeing him

6   in a chance encounter in the drive-through line, indicated that the victim initiated the violent

7   events that followed.  Petitioner also argues that pointing out this discrepancy would have cast

8   doubt on the credibility of all of the prosecution witnesses who testified that the victim happened

9   only by chance to meet petitioner at the fast food restaurant.

10        Ms. Hernandez also told the police officer at the scene that the victim and Floyd

11  Niepert got out of their car and approached petitioner's car together.  (Pet., Attach 12(d), Ex. Q.)

12  At trial, she testified that after petitioner got out of the car, she and her mother and Floyd Niepert

13  also got out and started "walking up there together."  (RT at 311.)   Petitioner argues that these

14  statements are internally inconsistent and also inconsistent with the victim's testimony at the

15  preliminary hearing and at trial that he got out of his car and walked up to petitioner by himself.

16  (Id. at 21-22, 140.)  Petitioner argues that if his counsel had pointed out all of these

17  inconsistencies in Hernandez's testimony, it would have prevented the prosecutor from arguing

18  in his closing argument that all of the prosecution witnesses had testified consistently with their

19  statements to the police officers at the scene.  (Id. at 595.)

20        Petitioner has failed to demonstrate that his trial counsel's failure to impeach

21  Sabrina Hernandez with the above-described testimony constituted ineffective assistance.  The

22  court first notes that Ms. Hernandez's testimony is not necessarily inconsistent.  In addition, Ms.

23  Hernandez was only twelve years old at the time of her testimony.  (Id. at 309.)  For tactical

24  reasons, petitioner's trial counsel may have decided not to impeach this young witnesses with

25  minor inconsistencies in her testimony in front of the jury.  In any event, these inconsistencies

26  could not have had a major impact on the verdict.  The evidence at trial was uncontroverted that

1   the victim exited his car and approached petitioner's car to collect payment of a debt, whereupon

2   the violence began.  In light of this evidence, it was immaterial whether the victim spotted

3   petitioner before or after he entered the parking lot or whether the victim approached petitioner

4   alone or with several other persons from his vehicle.  The court also disagrees that evidence of

5   minor inconsistencies in Sabrina Hernandez's testimony would have precluded the prosecutor

6   from arguing that his witnesses consistently told the same story.  The prosecution witnesses

7   consistently testified that after the victim approached petitioner's car, petitioner began assaulting

8   him with a baseball bat.  The testimony challenged by petitioner did not have any impact on that

9   essential fact.  In short, petitioner has failed to demonstrate either substandard performance or

10  prejudice with respect to this claim.  Accordingly, the claim should be denied.

11                  18.  <u>Failure to Call Officer Stevens as a Witness</u>

12          Petitioner claims that his trial attorney rendered ineffective assistance when she

13  failed to call Officer Stevens as a defense witness to "impeach" prosecution witnesses Erica

14  McCurry, Melody Latham and the victim with "inconsistent statements."  (Pet., Attach 12(d) at

15  16; Traverse at 55.)  The "inconsistent statements" about which petitioner complains are not

16  described in this claim.  Petitioner states that he "pleaded with" his attorney to call this witness

17  but she "refused."  He argues that "had the jury known of all the inconsistencies involved in these

18  witnesses statements and testimonies they would not have convicted the petitioner."  (Traverse at

19  55.)  Respondent contends that this claim has not been exhausted in state court.  Even assuming

20  arguendo that petitioner has failed to exhaust this claim, it should be denied pursuant to 28

21  U.S.C. § 2254(b)(2).

22          Petitioner's claim in this regard is too vague and conclusory to warrant federal

23  habeas corpus relief.  <u>Jones v. Gomez</u>, 66 F.3d 199, 204.  In addition, petitioner's allegations that

24  he asked counsel to call Officer Stevens to the witness stand demonstrate that counsel did not

25  overlook this witness but decided, in her professional judgment, not to call her.  This tactical

26  /////

1   decision is presumed to be within the range of competency.  Harris v. Pulley, 885 F.2d at 1368.

2   Accordingly, petitioner is not entitled to relief on this claim.

3                  19.  Failure to Call Natalie Cordova as a Defense Witness

4                  Petitioner's next claim is that his trial counsel rendered ineffective assistance

5   when she failed to call Natalie Cordova as a defense witness to testify that the debt owed to the

6   victim by petitioner was for the sale of marijuana, and not for food for his son, and that the

7   victim was angry with petitioner and was going to "kick his ass."  (Pet., Attach 12(d) at 16.)

8   Petitioner contends that his trial counsel should have called Ms. Cordova as "a rebuttal witness

9   after the prosecution witnesses testified the money owed by the Petitioner was a loan."  (Traverse

10  at 55.)  This claim was summarily rejected by all of the California courts to which it was

11  presented.  (Answer, Exs. E - K.)  Under these circumstances, the court must independently

12  review the record to determine whether habeas corpus relief is available.  Delgado, 223 F.3d at

13  982.

14                 The state court record reflects that, prior to trial, the following comments were

15  made by the trial judge and petitioner's counsel:

16          THE COURT: It is my understanding that Lorie Perez, Shauna
            Ortega and Natalie Cordova may testify that there was a $60 debt
17          over a marijuana transaction that – or an agreement that existed
            between the Defendant and the victim about a $60 payment on a
18          marijuana transaction and there's insufficient evidence before the
            Court at this time to make a determination as to whether or not that
19          would be relevant.

20          So, if it's the defense intention to call one of these witnesses as to
            this issue then there would need to be a hearing outside the
21          presence of the jury.

22          MS. CULET (petitioner's counsel): I understand that, your Honor.
            May I add something.  I did speak with two – I am – I released
23          Natalie Cordova, there is no issue, and I'm in agreement, her
            statement – her testimony she would offer would be hearsay and
24          not admissible under any exception.

25  (RT at 95.)  Petitioner argues that his counsel "failed to present sufficient evidence at the limine

26  motion that Natalie Cordova's testimony was relevant."  (Traverse at 55.)

1          Trial counsel's decision not to call Ms. Cordova as a witness was clearly a tactical

2   decision based on her opinion that the testimony was inadmissible hearsay and would not be

3   admitted.  Petitioner has failed to demonstrate that counsel's decision in this regard is incorrect.

4   In any event, petitioner himself informed the jury that the money was for marijuana and not for a

5   loan.  In addition, the prosecutor correctly informed the during his closing argument that:

6               even if you want to believe that, even if you want to believe that it
                was for marijuana, it's absolutely irrelevant.  It is irrelevant to the
7               crimes which took place, because no matter what it was for, the
                Defendant brutally beat three people with a baseball bat.

8

9   (RT at 593.)  Petitioner has failed to show that his trial counsel's decision not to proceed with the

10   testimony of Natalie Cordova was incompetent or prejudicial.  Accordingly, he is not entitled to

11   relief on this claim.

12          20.  Failure to Question Shawna Ortega About the Purpose of the $60 Transaction

13          Petitioner claims that his trial counsel rendered ineffective assistance when she

14   failed to "call Shawna Ortega as a rebuttal witness" to testify that the money petitioner owed the

15   victim was for marijuana and not for food, and that she heard the victim say "he was going to

16   catch up with the petitioner and kick his ass." (Pet., Attach 12(d) at 17.)  Petitioner argues, "my

17   lawyer knew the situation about the money was the main focus of the whole trial and it was very

18   crucial to the defense that the jury heard what the money was really used for, because the whole

19   trial was based on credibility." (Id. at 18.)  Petitioner also argues that this testimony was

20   necessary because it would have supported his testimony as to the nature of the $60 transaction.

21   Petitioner's claim in this regard was summarily rejected by all of the California courts to which it

22   was presented. (Answer, Exs. E - K.)  Under these circumstances, the court must independently

23   review the record to determine whether habeas corpus relief is available.  Delgado, 223 F.3d at

24   982.

25          The state court record reflects that Ms. Ortega, who was thirteen years old at the

26   time of her testimony, was called as a defense witness but was not questioned about the nature of

37

1   the monetary transaction between petitioner and the victim.  (RT at 386-92.)  She did testify that

2   the victim stated in her presence he was going to "kick [petitioner's] ass."  (Id. at 388.)  Prior to

3   trial, petitioner's counsel informed the trial court that Ms. Ortega would not be questioned about

4   the nature of the debt.  (Id. at 95.)  It is apparent that petitioner's counsel made a tactical decision

5   not to question this young witness about the $60 owed by petitioner to the victim, even though

6   her testimony might have had some value as impeachment evidence.  This decision was

7   reasonable under the circumstances and does not constitute ineffective assistance.  Accordingly,

8   this claim should be denied.

9          21.  Petitioner's Testimony

10         Petitioner claims that his trial counsel "forced" him to testify by telling him that

11   this was the only way the jury would find out the debt owed to the victim was for marijuana and

12   by promising him that if he testified about the nature of the debt, she would call Shawna Ortega

13   as a corroborating witness.  Petitioner argues that "counsel failed to hold up to her end of the

14   agreement.  Thereby depriving Petitioner of effective and honest counsel."  (Traverse at 61.)

15   Petitioner's claim in this regard was summarily rejected by all of the California courts to which it

16   was presented.  (Answer, Exs. E - K.)  Under these circumstances, the court must independently

17   review the record to determine whether habeas corpus relief is available.  Delgado, 223 F.3d at

18   982.

19         Petitioner's unsupported claim that his trial counsel forced him to testify under

20   false pretenses is too conclusory to warrant federal habeas corpus relief.  Jones v. Gomez, 66

21   F.3d 199, 204.  In addition, as noted by respondent, petitioner's testimony allowed him to present

22   a claim of self-defense.  Counsel's decisions with regard to whether petitioner should take the

23   stand in his defense were presumably within the wide range of competent professional assistance

24   and did not result in prejudice.  Accordingly, this claim should be denied.

25   /////

26   /////

C. Prosecutorial Misconduct

Petitioner's final claim is that the prosecutor committed misconduct on two occasions. These claims were summarily rejected by all of the California courts to which they were presented. (Answer, Exs. E - K.) Under these circumstances, the court must independently review the record to determine whether habeas corpus relief is available. Delgado, 223 F.3d at 982.

A defendant's due process rights are violated when a prosecutor's misconduct renders a trial fundamentally unfair. Darden v. Wainwright, 477 U.S. 168, 181 (1986). However, such misconduct does not, per se, violate a petitioner's constitutional rights. Jeffries v. Blodgett, 5 F.3d 1180, 1191 (9th Cir. 1993) (citing Darden, 477 U.S. at 181, and Campbell v. Kincheloe, 829 F.2d 1453, 1457 (9th Cir. 1987)). Claims of prosecutorial misconduct are reviewed "'on the merits, examining the entire proceedings to determine whether the prosecutor's [actions] so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Johnson v. Sublett, 63 F.3d 926, 929 (9th Cir. 1995) (citation omitted). See also Greer v. Miller, 483 U.S. 756, 765 (1987); Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974); Turner v Calderon, 281 F.3d 851, 868 (9th Cir. 2002). Relief on such claims is limited to cases in which the petitioner can establish that prosecutorial misconduct resulted in actual prejudice. Johnson, 63 F.3d at 930 (citing Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993)); see also Darden, 477 U.S. at 181-83; Turner, 281 F.3d at 868. Put another way, prosecutorial misconduct violates due process when it has a substantial and injurious effect or influence in determining the jury's verdict. See Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996).

Petitioner's first claim is that the prosecutor committed misconduct when he spoke to petitioner outside the presence of his attorney. The claim is stated, in full, as follows:

> On February 3, 1999, while I was sitting in the jury box in Department 8 in Judge Johnson's courtroom waiting for my arraignment, the district attorney came up to me and spoke to me for a few minutes when he asked me questions regarding my charges. I did not have an attorney at the time and did not know

1
2

> who would be representing me.  There was a video of the incident
> and I told my lawyer about it.  The video would have documented
> the inappropriate behavior of the district attorney.

3  (Pet., Attach. 12(e).)

4       The background to this claim has been described above in connection with

5  petitioner's claim B(5).  Petitioner has failed to demonstrate that his conversation with the

6  prosecutor rendered his trial fundamentally unfair or that the prosecutor's actions had a

7  substantial and injurious effect on the verdict.  Accordingly, this claim should be denied.

8       Petitioner's second claim is that the prosecutor knowingly presented false

9  testimony when he allowed Sabrina Hernandez to testify even though he knew her testimony was

10  inconsistent with her statements to police at the scene.  The background to this claim has been

11  described above in connection with claim B(17).  Essentially, petitioner claims that Ms.

12  Hernandez testified falsely about: (1) whether the victim spotted petitioner's car before they

13  entered the parking lot of the fast food restaurant or while they were in line waiting to order; and

14  (2) whether the victim approached petitioner's car alone or with anyone else from his vehicle.

15       "It is an established tenet of the due process clause that 'the deliberate deception

16  of the court by the presentation of false evidence is incompatible with the rudimentary demands

17  of justice.'"  United States v. Rewald, 889 F.2d 836, 860 (9th Cir. 1989) (quoting United States

18  v. Endicott, 869 F.2d 452, 455 (9th Cir. 1989)).  "[A] conviction obtained by the knowing use of

19  perjured testimony must be set aside if there is any reasonable likelihood that the false testimony

20  could have affected the jury's verdict."  United States v. Bagley, 473 U.S. 667, 680 n.9 (1985).

21  This rule applies even where the false testimony goes only to the credibility of the witness.

22  Napue v. Illinois, 360 U.S. 264, 269 (1959.)  There are two components to establishing a claim

23  for relief based on the introduction of perjured testimony at trial.  First, the moving party must

24  establish that the statements were false.  United States v. Polizzi, 801 F.2d 1543, 1549-50 (9th

25  Cir. 1986).  Second, the movant must demonstrate that the prosecution knowingly used the

26  /////

1   perjured testimony.  Id.  Mere speculation regarding these factors is insufficient to meet movant's

2   burden.  United States v. Aichele, 941 F.2d 761, 766 (9th Cir. 1991).

3          In the context of a petition for relief under 28 U.S.C. § 2255 the Ninth Circuit

4   Court of Appeals has held that proof of knowledge by the prosecution is required to support a

5   claim of denial of due process based upon the admission of prejudicial perjured testimony in a

6   criminal trial.  See Marcella v. United States, 344 F.2d 876, 880 (9th Cir. 1965) ("Before a

7   sentence may be vacated on the ground of perjured testimony, the movant must show that the

8   testimony was perjured and that the prosecuting officials knew at the time such testimony was

9   used that it was perjured."); Black v. United States, 269 F.2d 38, 43 (9th Cir. 1959); Taylor v.

10  United States, 221 F.2d 228 (9th Cir. 1955).  See also Ortiz v. Stewart, 149 F.3d 923, 936 (9th

11  Cir. 1998) ("If a prosecutor knowingly uses perjured testimony or knowingly fails to disclose that

12  testimony is false, the conviction must be set aside if there is any reasonable likelihood that the

13  false testimony could have affected the jury verdict.").

14         As explained above, a careful review of Hernandez's testimony does not reflect

15  any material inconsistencies.  She testified both at the scene and at trial that the victim saw

16  petitioner before getting out of his car and that he approached petitioner because he wanted to

17  speak to him about the debt.  She also testified consistently that the victim walked up to

18  petitioner's vehicle with at least one other person following him.  Under the circumstances

19  presented here, petitioner has failed to show that any testimony of Hernandez was "false" or that

20  the prosecutor knew that it was false.  Petitioner has also failed to show that these minor

21  inconsistencies in Hernandez's testimony had any effect on the verdict.  Accordingly, petitioner

22  is not entitled to relief on this claim.[10]

23  _____

24       [10]  Petitioner requests an evidentiary hearing on his claims.  Title 28 U.S.C. § 2254(e)(2)
     sets forth the circumstances under which a habeas petitioner is entitled to an evidentiary hearing.
25   Under the statutory scheme, a district court presented with a request for an evidentiary hearing
     must first determine whether a factual basis exists in the record to support a petitioner's claims
26   and, if not, whether an evidentiary hearing "might be appropriate."  Baja v. Ducharme, 187 F.3d
     1075, 1078 (9th Cir. 1999).  See also Insyxiengmay v. Morgan, 403 F.3d 657, 669-70 (9th Cir.

1    For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that

2    petitioner's application for a writ of habeas corpus be denied.

3    These findings and recommendations are submitted to the United States District

4    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

5    days after being served with these findings and recommendations, any party may file written

6    objections with the court and serve a copy on all parties.  Such a document should be captioned

7    "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

8    /////

9    /////

10   /////

11   /////

12   /////

13   /////

---

2005).  Petitioner has not demonstrated that any additional facts need be determined for a fair resolution of the merits of any of his claims.  Thus, petitioner has failed to overcome the initial hurdle identified above.

Even assuming arguendo that additional facts need be determined and that petitioner did not receive a full hearing in state court despite his best efforts, petitioner has not demonstrated that an evidentiary hearing is required.  A state habeas petitioner is entitled to an evidentiary hearing on a claim only if he alleges "facts that, if proven, would entitle him to relief."  Turner v. Calderon, 281 F.3d 851, 890 (2002) (quoting Tapia v. Roe, 189 F.3d 1052, 1056 (9th Cir. 1999)) ("[e]ntitlement to an evidentiary hearing based on alleged ineffective assistance, for example, requires a showing that if his allegations were proven at the evidentiary hearing, deficient performance and prejudice would be established").  See also Townsend v. Sain, 372 U.S. 293 (1963) (a defendant is entitled to a federal evidentiary hearing on his factual allegations only if the merits of the factual dispute were not resolved in the state hearing, the state factual determination is not fairly supported by the record as a whole, the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing, there is a substantial allegation of newly discovered evidence, the material facts were not adequately developed at the state-court hearing, or for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing).  As discussed above, petitioner has failed to demonstrate that he is entitled to relief on his claims in this court.  Further, this court has determined that relief as to petitioner's claims should be denied on the merits because the state court's decision was not contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, an evidentiary hearing is not warranted.  See Williams, 529 U.S. at 445.

1  shall be served and filed within ten days after service of the objections.  The parties are advised

2  that failure to file objections within the specified time may waive the right to appeal the District

3  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

4  DATED: June 15, 2006.

UNITED STATES MAGISTRATE JUDGE

008:santos1571.hc